IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-100

No. 494A20

Filed 27 August 2021

IN THE MATTER OF: M.J.M. and A.M.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 20 August 2020 by Judge Brooke Clark in District Court, Robeson County. This matter was calendared for argument in the Supreme Court on 21 June 2021 but determined on the record and brief without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee.*

*Dorothy Hairston Mitchell for respondent-appellant mother.*

HUDSON, Justice.

¶ 1 Respondent-mother appeals from the trial court's orders terminating her parental rights to the minor children M.J.M. (Mariel)[1] and A.M.M. (Audrey). Upon consideration of respondent-mother's arguments, we affirm.

## I. Background

¶ 2 This is an appeal in private termination proceedings initiated by the children's paternal aunt (petitioner) to terminate the parental rights of respondent-mother and

---

[1] Pseudonyms are used to protect the identity of the minor children and for ease of reading.

the children's father.[2] On 19 September 2019, petitioner filed a verified petition to terminate respondent-mother's parental rights to Mariel. The petition alleged that Mariel, who was born in June 2014, had resided with petitioner since October 2014 and that petitioner had been awarded guardianship of Mariel on 28 June 2016 in juvenile proceedings in the District Court in Wake County. The petition further alleged that grounds existed to terminate respondent-mother's parental rights to Mariel for failure to make reasonable progress, willful failure to pay a reasonable portion of Mariel's cost of care, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(2)–(3), (7) (2019). On 18 November 2019, petitioner filed a verified petition to terminate respondent-mother's parental rights to Audrey. The petition alleged that Audrey, who was born in May 2015, had resided with petitioner since May 2015. The petition further alleged that grounds existed to terminate respondent-mother's parental rights to Audrey for willful failure to pay a reasonable portion of Audrey's cost of care and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(3), (7).

¶ 3    The termination petitions were served on respondent-mother by certified mail, and respondent-mother did not file answers to the petitions.

¶ 4    At a pre-adjudication hearing on the termination petitions on 17 February

---

[2] The father ultimately consented to petitioner's adoption of Mariel and Audrey, making it unnecessary for petitioner to proceed with the termination of his parental rights. Accordingly, he is not a party to this appeal, and this opinion does not discuss the allegations in the termination petitions related to the father.

2020, the trial court determined it had jurisdiction over the petitions and scheduled a termination hearing for 20 April 2020. The termination hearing was continued once upon a motion by respondent-mother, but the trial court denied respondent-mother's motion to further continue the matter and heard the termination petitions together on 29 June 2020. On 20 August 2020, the trial court entered orders terminating respondent-mother's parental rights to Mariel and Audrey. The trial court concluded that grounds existed to terminate respondent-mother's parental rights to both children for willful failure to pay a reasonable portion of their cost of care and willful abandonment, *see* N.C.G.S. § 7B-1111(a)(3) and (7), and it was in the children's best interests to terminate her parental rights. Respondent-mother appealed the termination orders.

## II. Analysis

¶ 5 Respondent-mother argues on appeal: (1) the trial court lacked subject-matter jurisdiction to enter the order terminating her parental rights to Mariel, and (2) the trial court erred by failing to exercise its discretion to appoint a guardian ad litem for the children. Respondent-mother does not otherwise challenge the trial court's adjudication of the existence of grounds to terminate her parental rights or its determination that termination was in the children's best interests.

### A. Jurisdiction

¶ 6 We first address respondent-mother's argument that the trial court lacked

subject-matter jurisdiction over the petition to terminate her parental rights to Mariel. "Whether or not a trial court possesses subject-matter jurisdiction is a question of law that is reviewed de novo. Challenges to a trial court's subject-matter jurisdiction may be raised at any stage of proceedings, including for the first time before this Court." *In re A.L.L.*, 376 N.C. 99, 101 (2020) (cleaned up) (quoting *In re T.R.P.*, 360 N.C. 588, 595 (2006)).

¶ 7        Respondent-mother argues the District Court in Robeson County lacked subject-matter jurisdiction over the petition to terminate her parental rights to Mariel because the District Court in Wake County obtained and retained exclusive jurisdiction "over Mariel" in Mariel's underlying juvenile case, in which the District Court in Wake County granted petitioner guardianship of Mariel in June 2016. Respondent-mother thus asserts the order entered by the District Court in Robeson County terminating her parental rights to Mariel must be vacated. *See In re T.R.P.*, 360 N.C. at 590 ("Subject[-]matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act[.]"). We disagree.

¶ 8        This Court recently rejected a similar jurisdictional argument in *In re A.L.L.*, in which the respondent argued "the Davie County District Court lacked subject-matter jurisdiction to enter an order terminating her parental rights because the Davidson County District Court had previously entered a permanency-planning order

establishing [the] petitioners as [the juvenile's] legal permanent guardians." *In re*

*A.L.L.*, 376 N.C. at 103. In that case, we recognized "[a] trial court's subject-matter

jurisdiction over a petition to terminate parental rights is conferred by N.C.G.S. § 7B-

1101." *Id.* at 104. That section provides,

> [t]he court shall have exclusive original jurisdiction to hear
> and determine any petition or motion relating to
> termination of parental rights to any juvenile who resides
> in, is found in, or is in the legal or actual custody of a county
> department of social services or licensed child-placing
> agency in the district at the time of filing of the petition or
> motion.

N.C.G.S. § 7B-1101 (2019). This Court further explained,

> [i]t is well-established that a court's jurisdiction to
> adjudicate a termination petition does not depend on the
> existence of an underlying abuse, neglect, and dependency
> proceeding. Indeed, although the Juvenile Code permits
> petitioners to seek termination in the same district court
> that is simultaneously adjudicating an underlying abuse,
> neglect, or dependency petition, the statutory language
> does not mandate filing in a single court. Thus, . . . a trial
> court lacks jurisdiction over a termination petition if the
> requirements of N.C.G.S. § 7B-1101 have not been met,
> even if there is an underlying abuse, neglect, or
> dependency action concerning that juvenile in the district
> in which the termination petition has been filed. However,
> if the requirements of N.C.G.S. § 7B-1101 have been met
> in one county, then a district court in that county has
> jurisdiction, even if an abuse, neglect, or dependency action
> is pending in another county.

*In re A.L.L.*, 376 N.C. at 105 (cleaned up) (quoting *In re E.B.*, 375 N.C. 310, 317

(2020)). Accordingly, we held the trial court had jurisdiction in *In re A.L.L.* when "the

petitioners were [the juvenile's] legal permanent guardians who filed their petition in the district court in the county where they resided with [the juvenile], satisfying the requirements of N.C.G.S. § 7B-1101." *Id.*

In the present case, it is undisputed that petitioner was Mariel's legal permanent guardian and that petitioner filed the termination petition in the District Court in Robeson County, the county in which petitioner resided with Mariel. Therefore, the requirements of N.C.G.S. § 7B-1101 were satisfied so as to confer jurisdiction over the termination petition in the District Court in Robeson County. Accordingly, we overrule respondent-mother's argument that the District Court in Robeson County lacked subject-matter jurisdiction over the petition to terminate her parental rights to Mariel.

**B. Guardian ad Litem**

We next address respondent-mother's argument that the trial court erred by failing to exercise its discretion to appoint a guardian ad litem (GAL) for the children. The appointment of a GAL for a juvenile in termination proceedings is governed by N.C.G.S. § 7B-1108. That section provides, in relevant part:

> (b) If an answer or response denies any material allegation of the petition or motion, the court shall appoint a guardian ad litem for the juvenile to represent the best interests of the juvenile . . . .

> (c) In proceedings under this Article, the appointment of a guardian ad litem shall not be required except, as provided above, in cases in which an answer or response is filed

> denying material allegations . . . ; but the court may, in its discretion, appoint a guardian ad litem for a juvenile, either before or after determining the existence of grounds for termination of parental rights, in order to assist the court in determining the best interests of the juvenile.

N.C.G.S. § 7B-1108(b)–(c) (2019).

¶ 11      It is undisputed that respondent-mother did not file an answer or response to the termination petitions. Therefore, the trial court was not required to appoint a GAL pursuant to N.C.G.S. § 7B-1108(b). However, respondent-mother contends the trial court failed to exercise its discretion under N.C.G.S. § 7B-1108(c) to appoint a GAL absent an answer or response because the trial court was under a mistaken belief that it could not do so. Due to the trial court's alleged misapprehension of the law, respondent-mother contends the termination orders must be reversed and remanded in order for the trial court to exercise its discretion under N.C.G.S. § 7B-1108(c). Again, we disagree.

¶ 12      First, although the trial court considered appointing a GAL in deciding whether to grant respondent-mother's motion to further continue the termination hearing, no party moved for the trial court to appoint a GAL for the children, nor was there any objection to the lack of a GAL. Thus, respondent-mother failed to preserve this issue for appellate review. *See In re A.D.N.*, 231 N.C. App. 54, 65–66 (2013) (reiterating that "in order to preserve for appeal the argument that the trial court erred by failing to appoint the child a GAL, a respondent must object to the asserted

error below" (citing *In re Fuller*, 144 N.C. App. 620, 623 (2001); *In re Barnes*, 97 N.C. App. 325, 326 (1990))), *disc. rev. denied*, 367 N.C. 321 (2014); *see also* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion . . . .").[3]

¶ 13      Moreover, assuming arguendo the issue was preserved, the record does not "undoubtedly show the trial court mistakenly believed [it] could not appoint a guardian ad litem since an answer was not filed[,]" as asserted by respondent-mother. The transcript of the termination hearing shows that respondent-mother's attorney moved to continue the termination hearing for a second time when the matter was called on 29 June 2020 due to respondent-mother's absence. Although respondent-mother was not physically present, she participated by telephone. In considering the motion to continue, the trial court identified various considerations, including that respondent-mother indicated she was contesting termination of her parental rights despite her prior indecisiveness and failure to file an answer. The trial court indicated it believed it was better practice to have a GAL involved if respondent-mother was

---

[3] We note that respondent-mother asserts the matter should be reviewed on appeal despite her failure to raise the issue or an objection in the trial court. She relies on the Court of Appeals' decisions in *In re Fuller*, 144 N.C. App. 620 (2001), and *In re Barnes*, 97 N.C. App. 325 (1990). In those cases, however, the court did not hold that challenges to the trial court's failure to appoint a GAL were preserved for appellate review; the court instead invoked Rule 2 of the North Carolina Rules of Appellate Procedure to suspend the appellate rules in order to reach the issue of whether the trial court committed prejudicial error by failing to comply with the statutory mandate that a GAL shall be appointed when an answer is filed contesting a termination petition. *In re Fuller*, 144 N.C. App. at 623; *In re Barnes*, 97 N.C. App. at 326–27.

contesting the matter and acknowledged that the reason there was not yet a GAL involved was because respondent did not file an answer. However, the trial court indicated it wanted to hear from the parties before deciding how to proceed. The transcript shows that the trial court remained concerned about further delay in the proceedings after hearing from the parties, and the trial court ultimately denied the motion to continue and proceeded without appointing a GAL after respondent-mother indicated the only evidence she could offer was her own testimony, which the trial court allowed by telephone.[4] The record does not indicate the trial court was under a misapprehension of the law or failed to exercise its discretion. We overrule respondent's argument.

### III. Conclusion

Having overruled respondent-mother's arguments that the trial court lacked subject-matter jurisdiction over the petition to terminate her parental rights to Mariel and that the trial court erred in failing to exercise its discretion to appoint a GAL for the children, and because respondent-mother does not challenge the trial court's adjudication of the existence of grounds to terminate her parental rights or determination that termination was in the children's best interests, we affirm the trial court's orders terminating respondent-mother's parental rights to Mariel and

---

[4] Respondent-mother does not challenge the trial court's denial of her motion to continue.

Audrey.

AFFIRMED.